### KEYSTONE OIL & MFG. CO. v. BUZBY.

(Circuit Court of Appeals, Seventh Circuit. October 6, 1914.)

#### No. 2065.

1. TRADE-MARKS AND TRADE-NAMES ☞70—UNFAIR COMPETITION—ACTS CONSTITUTING.

Where, before defendant entered into the sale of lubricants, plaintiff had manufactured and sold lubricating greases and oils under the trade-name of "Keystone Lubricating Company," which had become known as "Keystone greases," and the word "Keystone," as applied to lubricating oils, had come to mean plaintiff's products, any simulation on the part of defendant of such designations for such goods, calculated to palm off defendant's products on purchasers as plaintiff's products, would entitle plaintiff to an injunction and other equitable relief.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. ☞70.

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

2. TRADE-MARKS AND TRADE-NAMES ☞70—UNFAIR COMPETITION—ACTS CONSTITUTING.

To sanction relief against alleged unfair competition, there must be a deceptive use of a name or word amounting to a fraud on the public, as the essence of the wrong consists in the sale of the goods of one manufacturer or dealer for those of another; but the deception may be practiced by the fraudulent use of the corporate name.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. ☞70.]

3. TRADE-MARKS AND TRADE-NAMES ☞73—UNFAIR COMPETITION—NAMES.

Where, though plaintiff had been selling lubricating oils and greases, which had become known as "Keystone greases," under the trade-name of "Keystone Lubricating Company," before defendant engaged in that business in Chicago, defendant succeeded a company engaged in the sale of Pennsylvania oils, oil products, and lubricants, under the name of the "Pennsylvania Oil Company," and, a reincorporation being desirable, substituted the word "Keystone" for the word "Pennsylvania" before plaintiff opened its branch office in Chicago, without knowledge or intimation of plaintiff's business, or of his trade-name, and no officer or authorized representative of defendant understood or intended that its goods and

markings were calculated to deceive purchasers or simulate in any respect plaintiff's products, or were sold or tendered as plaintiff's products, there being no fraud in connection with the origin and use of the corporate name, its use in connection with the sale of lubricating oils and greases should not have been enjoined.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. ☞73.]

4. TRADE-MARKS AND TRADE-NAMES ☞97—UNFAIR COMPETITION—INJUNCTION—CONDITIONS.

Where defendant's agents, in some instances, had by deceptive representations or conduct palmed off defendant's goods on purchasers as plaintiff's Keystone greases, it would be enjoined from selling its lubricants under its corporate name, without inscribing on each package a notation that the product was not that of the Keystone Lubricating Company.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 110, 111; Dec. Dig. ☞97.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Arthur L. Sanborn, Judge.

Bill by Augustus C. Buzby, doing business under the firm name of the Keystone Lubricating Company, against the Keystone Oil & Manufacturing Company. Decree for complainant (206 Fed. 136), and defendant appeals. Reversed, with directions.

The appellant, Keystone Oil & Manufacturing Company, an Illinois corporation, is defendant in a bill filed by the appellee, Buzby, charging unfair competition in trade on the part of the appellant in the use of its corporate name, and this appeal is from a decree of the District Court, on final hearing of the issues, perpetually enjoining the appellant from doing business in the sale of lubricating oils or lubricating greases "under the name of Keystone Oil & Manufacturing Company" or under any corporate name containing the word "Keystone," also from holding out or representing said defendant "to be the same as the complainant Keystone Lubricating Company," and also from representing its lubricating greases to be "genuine Keystone grease," or "Keystone grease." The facts in evidence, in so far as they are deemed material, are mentioned in the ensuing opinion.

Francis W. Parker, of Chicago, Ill., for appellant.
Carlos S. Andrews, of Chicago, Ill., for appellee.

Before BAKER, SEAMAN, and MACK, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The bill filed by the appellee, Buzby, and the decree in conformity therewith granting injunctional relief against the appellant, rest on charges of unfair competition in the sale of lubricating greases, arising mainly, if not entirely, out of the use by the appellant of its corporate name, Keystone Oil & Manufacturing Company. While the bill avers long possession, registration, and use by appellee of "the arbitrary symbol of the Keystone of an arch as a trade-mark" in his business, the evidence is undisputed that such trade-mark has never been used by the appellant, and that no infringement thereof has been committed in its business; and the ruling of the Circuit Court of Appeals for the Eighth Circuit, in Buzby v. Davis, 150 Fed. 275, 80 C. C. A. 163,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

10 Ann. Cas. 68, in reference to conceded use of such trade-mark, which is greatly relied upon for support of the present decree, is inapplicable and furnishes no aid in that direction.

[1] These material averments, however, are established by the evidence: That the appellee has conducted his business, since the year 1885, at Philadelphia, Pa., in the manufacture and sale of "lubricating greases" and oils under "the trade-name of the Keystone Lubricating Company" (without incorporation); that the name "Keystone greases" has been applied to his lubricating oil products throughout such times, and the word "Keystone" so applied "is known to buyers to mean" his products; and that his trade has extended to various states, with "branches and sales agencies" in different places, one branch "being now established at Chicago" under his trade-name. As it further appears that the appellant (located at Chicago) entered into the sale of lubricants, in connection with the sale of various kinds of oil and oil products, long after the appellee had established his business in Philadelphia as above described, the rule is elementary in equity that proof of simulations on the part of the appellant of either of the above-mentioned designations for such goods, calculated to palm them off on purchasers as the appellee's production, would entitle the defrauded manufacturer to an injunction and other equitable relief. But no such simulation is either proved or asserted in respect of labeling or dressing the goods or packages, or advertising them in any manner as appellee's lubricants. On the contrary, it appears in evidence that the appellant's lubricants were conspicuously named and marked "Phillip's Special Banana Cup Grease." Moreover, the opinion filed below correctly states:

"The only infringement of the complainant's trade-mark, if any, consists in the use of the word 'Keystone' in the defendant's corporate name, and in the fact that it is claimed that the public has been deceived by such similarity, in that the defendant's lubricating grease has been purchased on some occasions by persons believing they were buying the complainant's brand. The cans in which the complainant and defendant sold their goods are radically different. The color, lettering, and descriptive matter are wholly distinct, as well as the odor of the grease itself."

[2] The decree as entered is directed to the issue thus narrowed, and proceeds upon the theory that use of the appellant's corporate name in the sale of lubricants, under the circumstances in evidence, constitutes unfair trade within the meaning of the established rule of equity thereupon. That rule is aptly defined in Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 140, 25 Sup. Ct. 609, 614 (49 L. Ed. 972), as follows:

"The essence of the wrong in unfair competition consists in the sale of the goods of one manufacturer or vendor for those of another, and if the defendant so conducts its business as not to palm off its goods as those of complainant, the action fails."

And the authorities concur that deceptive use of a name or word employed by another dealer, amounting "to a fraud on the public," must appear to sanction relief under this rule. Standard Paint Co. v. Trinidad Asphalt Co., 220 U. S. 446, 451, 462, 31 Sup. Ct. 456, 55 L. Ed. 536.

It is unquestionable, however, that such deception may be practiced by fraudulent use of a corporate name, and in that view the circumstances of the adoption and use by the appellant of its name may bear upon the issue.

[3] The undisputed facts are: That the appellant is the successor of a company engaged in business at Chicago, under the name of "Pennsylvania Oil Company," in the sale of various Pennsylvania oils and oil products and lubricants; that its purchase of the business occurred in October, 1900, and, reincorporation being desirable, the word "Keystone" was substituted for "Pennsylvania" (as having like meaning for origin of goods) in the corporate name which was then adopted; that such name was adopted more than a year prior to any location of the appellee in Chicago, and without knowledge or intimation either of the appellee's business or of his trade-name; that the sale of lubricants has at all times constituted a minor portion of the appellant's business, but is nevertheless a natural and valuable constituent thereof; and that no officer or authorized representative of the appellant has at any time understood or intended that its goods and markings were either calculated to deceive purchasers as to their origin, or simulated in any respect the appellee's products, or were sold or tendered otherwise than as appellant's brand of lubricants. We believe it to be unmistakable, therefore, that both origin and use of the corporate name so adopted were in good faith and entirely free from taint; that all "the indicia of fraud are lacking" (Brown Chemical Co. v. Meyer, 139 U. S. 540, 544, 11 Sup. Ct. 625, 35 L. Ed. 247) in respect of use of such name; and that the injunction against use thereof in the sale of appellant's lubricating oils and greases cannot be upheld.

The contention on behalf of the appellee for support of the decree, as we understand it, is this in effect: That the word "Keystone" has been so appropriated by the appellee in his business that his rights have become exclusive for its use in the marking and sale of lubricants. Such broad view, however, is untenable under the entire current of authorities. Words which are common to the public cannot be thus appropriated for exclusive use, beyond the limited extent recognized for the protection either of trade-marks against infringers or of trade-names against deceptive imitators. In the leading trade-mark case of McLean v. Fleming, 96 U. S. 245, 252, 24 L. Ed. 828, speaking in reference to trade-mark rights of a person in his own name, the opinion states the rule that:

"Such a party is not, in general, entitled to the exclusive use of a name, merely as such, without more. * * * Instead of that, he cannot have such a right, even in his own name, as against another person of the same name, unless such other person uses a form of stamp or label so like that used by the complaining party as to represent that the goods of the former are of the latter's manufacture."

Infringement, however, and not deceit, is the basis of a suit for violation of a trade-mark, although infringement is often ascertained from tendency to deceive. On the other hand, when a trade-name has become established for business or goods, protection is granted against wrongful and deceptive use by another under the above-stated doc-

trine of unfair competition, requiring proof of fraudulent conduct as the basis of relief. No person can acquire exclusive rights to employ any name or word, as part of his trade-name; but one may acquire reputation for his business or goods under any designation he has adopted therefor, and other traders are excluded under the rule from filching his trade by deceptive use of like designation.

We believe the other injunctional provisions of the decree to be alike unauthorized under the evidence above referred to, so that the decree as an entirety must be reversed.

[4] The testimony, however, clearly discloses three instances of deceptive representations or conduct on the part of agents of the appellant, whereby the appellant's goods appear to have been palmed off on purchasers as the appellee's "Keystone grease," and in view of such evidence we are of opinion that cause appears for relief against such impositions, by requiring the appellant to inscribe upon each of its packages of lubricant offered for sale a notation, in effect, that the product is not that of "Keystone Lubricating Company" of Philadelphia.

The decree of the District Court is therefore reversed, with direction to enter an injunctional decree against the appellant defendant, providing for the above-mentioned notice upon packages of lubricants offered for sale, together with costs, and the costs of this appeal are to be taxed against the appellee