## YELLOW CAB COMPANY v. COOKS TAXICAB & TRANSFER COMPANY.[1]

### March 21, 1919.

### No. 21,055.

**Trade-name — words of description — injunction.**

1. Descriptive words, words of color, cannot be monopolized, and, unless used in imitative combination, one trader has no right to an injunction restraining their use by a rival.

**Same — deceit of subsequent trader in their use.**

2. A person may adopt a trade-name consisting of a combination of words none of which are capable of exclusive appropriation. Descriptive words may, by long use, become identified with the business of a particular trader, and it is then unfair competition for a subsequent trader to use the same words in connection with a similar business in such manner as to deceive. The fact that the words used are part of a corporate name is not important. The essence of the wrong is deceit, and consists in the representation by the offender that his goods or his business are the goods or business of another.

**Yellow Taxicab Company.**

3. The words "Yellow Taxicab Company" may be acquired as a trade-name and the evidence is such as to sustain the court's finding that defendant had acquired that trade-name.

**Injunction against misleading use of words.**

4. The use of these descriptive words by plaintiff will not be entirely

1 Reported in 171 N. W. 269.

enjoined. Merely the misleading manner of using them will be enjoined, leaving plaintiff at liberty to use them in all ways not deceptive.

Action in the district court for Ramsey county to restrain defendant from using plaintiff's trade-name and for an accounting. By its answer defendant sought the same relief against plaintiff. Plaintiff obtained an order requiring defendant to show cause why a temporary injunction should not issue during the pendency of the action restraining it and its servants from using certain names containing the word "yellow" and from using plaintiff's trade-mark device. The matter was heard by Dickson, J., who made findings and granted defendant a temporary writ as stated at the end of the first paragraph of the opinion. Plaintiff's motion for amended findings was denied. From an order granting defendant a temporary writ of injunction and denying plaintiff's motion for additional and amended findings and conclusions, plaintiff appealed. Modified.

*Morphy, Bradford & Cummins,* for appellant.

*Barrows, Stewart & Metcalf,* for respondent.

HALLAM, J.

Plaintiff is a corporation operating yellow cabs in the city of St. Paul. Defendant also operates yellow cabs in the same city. Plaintiff asked the court to restrain the use by defendant of the name "Yellow Cab Company" or "Yellow Taxicab Company" or "Yellow Cab" or any name containing the word "yellow" as part thereof in connection with its taxicab or automobile service in St. Paul. Defendant retorted by claiming the prior exclusive right to use the word "yellow," and asked similar relief as against plaintiff. On application for a temporary injunction the court found for defendant and ordered an injunction restraining plaintiff during the pendency of the action "from making any further use in connection with its business in the city of St. Paul * * * of the name 'Yellow Cab Company' or 'The Yellow Cab Co.' or 'Yellow Auto Co.' [or] 'Yellow Auto Service Co.' and from making use of the word 'yellow' in its name or anything denoting the designation of its business." Plaintiff appeals from this order.

The hearing was upon affidavits. The trial court found facts as follows:

In July, 1915, the Twin City Taxicab & Transfer Company formed a design of putting on the streets of St. Paul and Minneapolis a cheaper cab service to be known as the "Yellow Cab Service," and appropriated to its use as a trade-name the "Yellow Taxicab Company," and began advertising itself under such name as proprietor and purveyor of Yellow Cabs, Yellow Taxicabs, and Yellow Taxi Service. On October 15, 1915, it put upon the streets a number of light yellow and black automobile taxicabs. In October, 1916, defendant succeeded to the St. Paul business of the Twin City Taxicab & Transfer Company and continued the advertising and the service. In the fall of 1917 it practically abandoned its old yellow cabs, but intended to replace them and continued to advertise itself as the Yellow Taxicab Company and as furnishing Yellow Cabs and Yellow Taxi Service, and never abandoned its trade-name or the business, and later put upon the streets orange and black cabs, which service it continued until the commencement of this action.

Plaintiff was incorporated as the "Yellow Cab Company" in October, 1915, but did no business until July, 1917. Soon after that it began to advertise that it would install in St. Paul a "Yellow Cab Service" and "Yellow Taxicabs," and has since continued advertising itself under other names, such as "Yellow Autocab Company," "Yellow Auto Company" and "Yellow Auto Service Company," and on September 3, 1917, it placed upon the streets for hire a considerable number of orange and black auto taxicabs with the words "Yellow Cab Company" on the door. This service it has ever since continued.

The affidavits conflict at some points, but they are such as to sustain these findings of fact. It appears therefore that defendant first put yellow cabs on the streets, and that it used the name "Yellow Taxicab Company" before plaintiff used its present name.

The question is: Do these facts give defendant priority of right to the use of the name "Yellow Taxicab Company" and the right to restrain plaintiff in the use of its corporate name or to use the word "yellow" in any way? No trade-mark is claimed. The basis of defendant's claim is unfair competition.

1. We have no hesitation in holding that plaintiff should not be enjoined from using the word "yellow." It is a descriptive word, descriptive of a primary color. Not only that, but, as defendant itself claims,

it is, as applied to cabs, descriptive of a low-priced service. Descriptive words, words of color, cannot be monopolized by any one, and unless used in imitative combination their use cannot be enjoined. 38 Cyc. 726, 800; Leschem Rope Co. v. Brodereck, 201 U. S. 166, 26 Sup. Ct. 425, 50 L. ed. 710; H. E. Winterton Gum Co. v. Autosales Gum & Chocolate Co. 211 Fed. 612, 128 C. C. A. 212. The right of plaintiff to operate yellow cabs is unquestioned. Yet if the order stands it may not advertise its use of them. A person entitled to offer an article to the public is entitled to advertise that fact and to call his article by the only name by which it is known.

The books abound in cases sustaining these principles. This court has held that there can be no exclusive appropriation of the words "Dr. Ward's Liniment," Watkins v. Landon, 52 Minn. 389, 54 N. W. 193, 19 L.R.A. 236, 38 Am. St. 560; "Marble Works," Rodseth v. Northwestern Marble Works, 129 Minn. 472, 152 N. W. 885, Ann. Cas. 1917A, 257; "Sulphur Springs," Jordan Sulphur Springs & M. B. S. Co. v. Mudbaden Sulphur Springs Co. 135 Minn. 123, 160 N. W. 252. The same has been held as to blue and gold labels, with the words "best six cord" on spools of thread. Coats v. Merrick Thread Co. 149 U. S. 562, 13 Sup. Ct. 966, 37 L. ed. 847; "Goodyear Rubber," as applied to goods produced by Goodyear's inventions, Goodyear India Rubber Glove Mfg. Co. v. Goodyear Rubber Co. 128 U. S. 598, 9 Sup. Ct. 166, 32 L. ed. 535; "Newport Sand," Newport Sand Bank Co. v. Monarch Sand Min. Co. 144 Ky. 7, 137 S. W. 784, 34 L.R.A.(N.S.) 1040; "Black Package Tea," Fischer v. Blank, 138 N. Y. 244, 33 N. E. 1040; and "The Excelsior White Soft Soap," Braham v. Bustard, 1 Hem. & M. 447. In the last case it was said the manufacturer cannot help calling his article "White Soft Soap." Plaintiff cannot well help calling its conveyances "yellow cabs." It has as much right to use the word "yellow" as it has to use the word "cab."

2. It does not follow that defendant has no priority of right in the name it has adopted. Under the findings of fact we think it has. Trade-names are protected upon very much the same principle as trade-marks. American Wine Co. v. Kohlam, 158 Fed. 830. But a trade-name need not be a technical trade-mark. It may consist of a combination of words all of which are common property. A proprietary interest in the terms

or symbols making up the name is not necessary to maintenance of a suit to enjoin the use of the name or an imitation of it by another. Rickard v. Caton College Co. 88 Minn. 242, 92 N. W. 958; Northwestern Knitting Co. v. Garon, 112 Minn. 321, 128 N. W. 288; Shaver v. Heller & Merz Co. 108 Fed. 821, 832, 48 C. C. A. 48, 65 L.R.A. 878; Bates Mnfg. Co. v. Bates Numbering Machine Co. 172 Fed. 892, 895; International Committee Y. W. C. A. v. Y. W. C. A. 194 Ill. 194, 62 N. E. 551, 56 L.R.A. 888. Descriptive words may by long use become identified in the minds of the public with the business of a particular trader and thus acquire a sort of secondary meaning, and it is then unfair competition for a subsequent trader to use the same words in connection with similar business in such manner as to deceive. 38 Cyc. 789; Standard Varnish Works v. Fisher, Thorsen & Co. 153 Fed. 928; Rubber, etc., Co. v. Devoe Co. 233 Fed. 150; Elgin Nat. Watch Co. v. Illinois Watch Case Co. 179 U. S. 665, 21 Sup. Ct. 270, 45 L. ed. 365; Reddaway v. Banham, App. Cas. 1896, p. 199.

Courts will not interfere where only confusion results from a similarity of names. The essence of the wrong in unfair competition consists in the representation by the offender that his goods or his business are the goods or business of another. Howe Scale Co. v. Wyckoff, 198 U. S. 118, 140, 25 Sup. Ct. 609, 49 L. ed. 972. "You must not use a description, whether true or not, which is intended to represent, or calculated to represent to the world, that your business is my business and so, by fraudulent misstatement, deprive me of the profits of the business which would otherwise come to me." Clark Thread Co. v. Armitage, 67 Fed. 896, 902. One man may have a right to exclude a rival from part of the "free field of the English language" when his rival would mislead customers to his own shop. Merely on the strength of being first in the field one may put later comers to the trouble of taking such reasonable precautions as are commercially practicable to prevent their lawful names and advertisements from deceitfully diverting the complainant's custom. American Waltham Watch Co. v. U. S. Watch Co. 173 Mass. 85, 53 N. E. 141, 43 L.R.A. 826, 73 Am. St. 263.

In Nesne v. Sundet, 93 Minn. 299, 101 N. W. 490, 106 Am. St. 439, 3 Ann. Cas. 30, and Rodseth v. Northwestern Marble Works, 129 Minn.

472, 152 N. W. 885, Ann. Cas. 1917A, 257, it was held that the use by the defendant of the geographical and descriptive words "Crookston Marble Works" in combination should be enjoined because of similarity of the name used by plaintiff.

In Viano v. Baccigalupo, 183 Mass. 160, 67 N. E. 641, a peanut roaster, who had built up a trade on Fulton street in Boston under the name "Boston Peanut Roasting Company," was held entitled to enjoin a rival, who later started in business on the same street, from using the name "Boston Trade Peanut Roasting Company," on the ground that this was stealing the good will attached to plaintiff's personality and taking the benefit of the public's desire to have their peanuts roasted by the plaintiff.

In C. A. Briggs Co. v. National Wafer Co. 215 Mass. 100, 102 N. E. 87, Ann. Cas. 1914C, 926, the use of the name "Boston Wafers" was enjoined. In Shaver v. Heller & Merz Co. 108 Fed. 821, 48 C. C. A. 48, 65 L.R.A. 878, the name "American Wash Blue" was enjoined. In Standard Paint Co. v. Rubberoid Roofing Co. 224 Fed. 695, 140 C. C. A. 235, the name "Rubberoid," except with explanation, was enjoined. In Lowe Bros. Co. v. Toledo Varnish Co. 168 Fed. 627, 94 C. C. A. 83, the name "High Standard" as applied to paints was enjoined.

The fact that the word is part of a corporate name is not important. Rodseth v. Northwestern Marble Works, 129 Minn. 472, 152 N. W. 885, Ann. Cas. 1917A, 257; Higgins Co. v. Higgins Soap Co. 144 N. Y. 462, 39 N. E. 490, 27 L.R.A. 42, 43 Am. St. 769. A subsequent trader may not even use his own name in such a manner as to cause his goods to be known in the market as the goods of another. Allegretti Chocolate Cream Co. v. Keller, 85 Fed. 643; Walter Baker Co. v. Slack, 130 Fed. 514, 65 C. C. A. 138; Van Houten v. Hooton Cocoa & Chocolate Co. 130 Fed. 600.

3. The combination of the words "Yellow Taxicab Company" may be acquired as a trade-name and be entitled to protection as such. The evidence of its appropriation by defendant is not strong, but we are of the opinion that it is sufficient to sustain the court's finding in favor of its appropriation. The court after trial on the merits on evidence received in open court may or may not adhere to this finding.

4. The use of descriptive terms by a second user will not be entirely

restrained.    Merely the misleading manner of using them will be enjoined, leaving the second user at liberty to use them in all ways not deceptive.   Herring-Hall-Marvin Safe Co. v. Hall's Safe Co. 208 U. S. 554, 28 Sup. Ct. 350, 52 L. ed. 616.   As said in the Singer Case, 163 U. S. 200, 16 Sup. Ct. 1002, 41 L. ed. 118, the word "must be accompanied with such indications that the thing manufactured is the work of the one making it, as will unmistakably inform the public of that fact." The "explanation must accompany the use so as to give the antidote with the bane."   Herring-Hall-Marvin Safe Co. v. Hall's Safe Co. 208 U. S. 554, 28 Sup. Ct. 350, 52 L. ed. 616.

In some cases the injunction has required, in connection with the use of the descriptive word, a notation that the article is not the product of the first user.   Keystone Oil & Mnfg. Co. v. Buzby, 219 Fed. 473, 135 C. C. A. 185; Standard Paint Co. v. Rubberoid Roofing Co. 224 Fed. 695, 140. C. C. A. 235; G. & C. Merriam Co. v. Saalfield, 198 Fed. 369, 375, 117 C. C. A. 245; Jenkins Bros. v. Kelly & Jones Co. 227 Fed. 211; Rubber, etc., Co. v. Devoe, etc., Co. 233 Fed. 150.   In most cases this has not been required.   Distinguishing marks that are sufficient in one case may not be in another.   In each case it is a question what explanation or distinguishing words will "unmistakably inform the public" of the truth.   The word "Victoria" or "Royal," it was said, might distinguish "White Soft Soap."   1 Hem. & M. 447.   Sometimes the user's name will distinguish, sometimes not.   Dowd v. United Mine Workers of America, 235 Fed. 1, 148 C. C. A. 495; Saalfield Pub. Co. v. G. & C. Merriam Co. 238 Fed. 1, 151 C. C. A. 77; Singer Mnfg. Co. v. June Mnfg. Co. 163 U. S. 169, 204; Singer Mnfg. Co. v. Bent, 163 U. S. 205, 16 Sup. Ct. 1002, 41 L. ed. 118.   "Ballards" Express is ample to distinguish a van or an express business from "Pratt's" Express, but a name might not distinguish publishers of "Webster's" dictionary.   G. & C. Merriam v. Saalfield, 198 Fed. 369, 375, 117 C. C. A. 245.   What is required is that the distinguishing words shall really distinquish and prevent deception.   Lowe Bros. Co. v. Toledo Varnish Co. 168 Fed. 627, 94 C. C. A. 83.

Plaintiff may use the word "yellow" or "yellow cab," but with appropriate words identifying its own business and distinguishing its business from that of defendant.

What is a proper distinguishing name had better be settled in this action that further litigation may be avoided.

Order modified.