CHARLES T. RICKARD and Another v. CATON COLLEGE COMPANY
and Others.[1]

January 9, 1903.

Nos. 13,317—(187).

**Trade-Name—Injunction.**

Where a private educational institution has been established and designated by a name under which it has acquired a valuable reputation and business standing, an imitation of its established title, calculated to mislead and deceive patrons, will be enjoined as unfair business competition, although the name imitated is not the subject of strict property right as a trade-mark.

Appeal by defendants from an order of the district court for Hennepin county, Harrison, J., denying a motion for a new trial. Affirmed.

*James A. Peterson* and *Paul J. Thompson*, for appellants.

It is well established by the authorities that words merely descriptive of the character, quality, or composition of an article cannot be monopolized as a trade mark. J. R. Watkins Medical Co. v. Sands, 83 Minn. 326; Van Beil v. Prescott, 82 N. Y. 630; Caswell v. Davis, 58 N. Y. 223; Amoskeag Mnfg. Co. v. Trainer, 101 U. S. 64; Brown Chemical Co. v. Meyer, 139 U. S. 540; Taylor v. Gillies, 59 N. Y. 331; Royal v. Sherrell, 93 N. Y. 331; Lawrence Mnfg. Co. v. Tennessee Mnfg. Co., 138 U. S. 537. The word "Minnesota's" is used by the defendants in describing this school, while the word "Minnesota" is used by the plaintiffs as a part of the name of their school. This is a geographical name and it is well settled that no one can apply the name of a district or country to a well-known article of commerce and obtain thereby such an exclusive right to the application as to prevent others inhabiting the district or dealing in similar articles coming from the district from truthfully using the same designation. Delaware & H. C. Co. v. Clark, 13 Wall. 311; Columbia Mill Co. v. Alcorn, 150 U. S. 460; Appeal of Laughman, 128 Pa. St. 1.

[1] Reported in 92 N. W. 958.

*Walter N. Carroll* and *H. V. Mercer*, for respondents.

Plaintiffs had acquired a trade name by adoption and user in the combination of words "Minnesota School of Business" before it was applied to a similar institution by any other individual—a property right which the courts will protect. Black, Law Dict. Titles: "Copyright," "Patent," "Trade-mark," "Trade-name;" Brown, Trade-marks (2d Ed.) §§ 91, 528; American v. Grocer, 25 Hun, 398; Symonds v. Greene, 28 Fed. 834; Avery v. Meikle, 81 Ky. 73, 112; Merserole v. Tynberg, 36 How. Pr. 14; Fleischmann v. Schuckmann, 62 How. Pr. 92; Barrows v. Knight, 6 R. I. 434; Williams v. Adams, 8 Biss. 452; Roberts v. Sheldon, 8 Biss. 398; Amoskeag Mnfg. Co. v. Trainer, 101 U. S. 64. A geographical name may be a trade-name. Metcalfe v. Brand, 86 Ky. 331; see brief in O'Kane v. West End, 72 Ill. App. 297.

Injunction will lie against the defendant for unfair competition if the complaint contains allegations of fraudulent acts and intent on the part of the defendant, regardless of validity or proprietary rights of the trade-mark or trade-name in controversy. 21 Enc. Pl. & Pr. 762, and cases cited; Merchants v. Detective, 25 Ill. App. 250; O'Kane v. West End, supra; Pierce v. Guittard, 68 Cal. 68; Keller v. Goodrich, 117 Ind. 556; Van Horn v. Coogan, 52 N. J. Eq. 380; Robertson v. Berry, 50 Md. 591; Plant v. Michel, 23 Mo. App. 579; Avery v. Meikle, supra; McLean v. Fleming, 96 U. S. 245, 254; Perry v. Truefitt, 6 Beav. 66; Carson v. Ury, 39 Fed. 777; Cleveland Stone Co. v. Wallace, 52 Fed. 431; Walker & Sons v. Mikolas, 79 Fed. 955. A trade-name which cannot be sustained as a trade-name may be protected from unfair competition, even though it has been adjudicated that both parties have the right to use the name, if the business or goods of one competitor is fraudulently represented to be that of another. The principle of unfair competition being that of common honesty—that none shall deceive the public by selling his goods for those of another. Cincinnati v. Cincinnati, 7 Ohio N. P. 135; Heller & Merz Co. v. Shaver, 102 Fed. 882; Shaver v. Heller & Merz Co., 108 Fed. 821; Weber Medical Tea Co. v. Krischstein, 101 Fed. 580; Little v. Kellam, 100 Fed. 353; Thomas G. Plant Co. v. May Co., 100 Fed. 72; Chancellor v. Wilmore-Andrews Pub. Co., 101 Fed. 443; Williams v. Mitchell, 106 Fed.

168; Sterling Remedy Co. v. Spermine Med. Co., 112 Fed. 1000; La Republique Francaise v. Saratoga Vichy Springs Co., 107 Fed. 459; Singer Mnfg. Co. v. Hipple, 109 Fed. 152; Russia Cement Co. v. Katzenstein, 109 Fed. 314; La Lance & Grosjean Mnfg. Co. v. National E. & S. Co., 109 Fed. 317; Sterling Remedy Co. v. Gorey, 110 Fed. 372; Wyckoff v. Howe Scale Co., 110 Fed. 500.

LOVELY, J.

This is a suit to restrain the use by defendants of a business sign and advertising devices adopted as a trade-name by plaintiffs.

The cause was tried to the court, who made findings of fact, and held as a conclusion of law that plaintiffs were entitled to the relief demanded in the complaint, ordering that a permanent injunction be issued to restrain the defendants from maintaining an obnoxious sign on their building in Minneapolis, and forbidding them to imitate or appropriate the business name previously used by plaintiffs to advertise the commercial college or school operated by them. Thereafter a motion was made to set aside the findings of the court and for a new trial, which was denied. From this order defendants appeal.

The plaintiffs, in 1891, established an institution at Minneapolis for the instruction of those desiring a business education, and adopted therefor as its descriptive name and title the words, "Minnesota School of Business," by which it has ever since been known and designated. The findings of fact, which are justified by the evidence, substantially set forth that under this characterization the plaintiffs, who were partners, acquired a valuable reputation and secured a large patronage for their institution; that the Minnesota School of Business became widely known, and secured an enviable standing as an educator of pupils cultivating business arts and purposing to engage in commercial pursuits.

The defendants, since 1888, have been similarly engaged in giving instruction in business arts, telegraphy, and shorthand in Minneapolis, designating the institution which they maintain as "The Caton College." In 1901 this college was incorporated under that name, and thereafter was conducted practically under the control of its president, Thomas J. Caton, one of the defendants here. In

the fall of that year defendants put forth a large number of circulars, at the head of which there were printed in ordinary script type the words, "The Caton College," below which were prominently set forth in much larger and heavier Roman type the words, "Minnesota's School of Business." Underneath, in letters of smaller type, followed the words, "Shorthand, Telegraphy, Typewriting, English and Normal Training." Also among other portions of the advertisement was the following:

"Four of the oldest established business schools of Minneapolis consolidated into one grand business educational institution, and incorporated under the management of the Caton College Company," etc.

It is claimed that this quoted statement was intended to create and convey the false impression that plaintiffs' school was absorbed in the defendants' institution. The defendants also placed upon the building in which their college was conducted a large and prominent sign twenty by forty feet in area, on which were painted in script letters as on the circulars the words "The Caton College," but in still larger and more attractive and prominent form the words "Minnesota's School of Business."

The plaintiffs complain of the use of this sign, and the extensive distribution of the circulars and advertisements somewhat similar in the Minneapolis papers, as an injurious interference with the trade-name and designation which had been previously adopted by themselves. It was alleged in the complaint that the plaintiffs had adopted for its trade-mark or trade name the title "Minnesota School of Business," to which it had acquired vested property rights; but upon the trial plaintiffs rested their claim for an injunction to restrain defendants' appropriation of the plaintiffs' business designation upon the ground that the imitation of such device in the respects mentioned amounted to an unfair business competition, calculated to withdraw patronage from plaintiffs' school through misleading and deceptive artifices in the practices thus resorted to by defendants.

The trial court further found, upon evidence which fully justified the finding, that the use of the device "Minnesota's School of Busi-

ness" in the circulars, and on the sign, after a distinctive character and reputation had been achieved and established therefor by plaintiffs' institute, had a tendency to divert support therefrom, and to wrongfully transfer it to the defendants' corporation, for which purpose it was adopted, which amounted to an illegal impairment of the rights of the party organizing the establishment first adopting and using such designation.

There cannot, we think, be any doubt of the conclusion of the court that the established name "Minnesota School of Business" had been the subject of palpable and apparent imitation in the sign on the building as well as the distribution of its circulars and advertisements. The one is as characteristically similar to the other "as the counterfeit presentment of two brothers" to the originals, and it is only necessary "to look on this picture and then on that" to demonstrate the correctness of the court's findings in this respect.

The court was also fully justified from the evidence showing the amount of business done by the plaintiffs in reaching the decision that such an imitation of plaintiffs' business devices would, in the nature of things, be injurious to its substantial interests; but it is strenuously urged that Minnesota was a geographical word of a descriptive character; that the word "school" describes the nature of the institution, and that neither of these terms could be made the subject of strict property right, or hence "trade-mark"; that the imitators were at liberty to describe their place of business as being in Minnesota, and to speak of their institution as a school, since this was a generic term, which no one might appropriate exclusively. This may be conceded, but the manner in which the description of the school was made, the means taken to imitate the style of plaintiffs' adopted name, went further than a reasonably fair description of its locality, or of the character of its location, and justified the complaint of the plaintiffs that the original and acquired description of their establishment was imitated in a manner that was likely to deceive and mislead persons by whom they would otherwise be patronized, hence that the designation of their school by the plaintiffs, though it might not secure for them

an exclusive property right in the use of the word "school" or "Minnesota" in a trade-mark or fanciful name, conferring upon it a secondary value as such, yet it seems quite clear that after the . peculiar use of the title to plaintiffs' institute for ten years, during which time it had been advertised as the "Minnesota School of Business," the adoption by another similar institute of a name so closely resembling this, and in such a prominent manner, that it is not easily discriminated therefrom, was not justified as fair or reasonable business competition, and was properly enjoined for that reason. The decided weight of authority in this country supports this view. Merchants v. Detective, 25 Ill. App. 250; Pierce v. Guittard, 68 Cal. 68, 8 Pac. 645; Keller v. Goodrich, 117 Ind. 556, 19 N. E. 196; Van Horn v. Coogan, 52 N. J. Eq. 380, 28 Atl. 788; Robertson v. Berry, 50 Md. 591; Plant v. Michel, 23 Mo. App. 579; Shaver v. Heller & Merz Co., 48 C. C. A. 48, 108 Fed. 822; Wyckoff v. Howe Scale Co. (C. C.) 110 Fed. 520.

Order affirmed.