The **PRESIDENT AND TRUSTEES OF COLBY COLLEGE**, a corporation incorporated under the laws of the State of Maine and having its principal place of business in the State of Maine

v.

**COLBY JUNIOR COLLEGE FOR WOMEN**, a corporation incorporated under the laws of the State of New Hampshire and having its principal place of business in the State of New Hampshire.

Civ. A. No. 73–102.

United States District Court,
D. New Hampshire.

June 1, 1973.

Lawrence E. Spellman, Sulloway, Hollis, Godfrey & Soden, Concord, N. H., Vincent L. McKusick, Pierce, Atwood, Scribner, Allen & McKusick, Portland, Me., for plaintiff.

F. Graham McSwiney, Hall, Morse, Gallagher & Anderson, Concord, N. H., for defendant.

## OPINION

BOWNES, District Judge.

The complaint in this case alleges infringement of a common-law trade name. Plaintiff "Colby College," located in Waterville, Maine, seeks a preliminary and permanent injunction forbidding the defendant, now "Colby Junior College for Women," located in New London, New Hampshire, from changing its name, effective July 1, 1973, to "Colby College-New Hampshire." Jurisdiction is based on diversity of citizenship and the requisite amount in controversy. 28 U.S.C. § 1332(a).

The question now presented is whether a preliminary injunction should issue. This requires a determination of whether the plaintiff will suffer irreparable harm if immediate relief is not granted and an assessment of the probabilities of the plaintiff prevailing on the merits.

Two preliminary matters to be resolved are the choice of law that applies and whether the plaintiff is barred by laches.

The prevailing view subsequent to Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), has been that state law governs a claim for unfair competition brought in a federal court. The parties have raised the issue of whether the substantive law of Maine or New Hampshire applies. New Hampshire is the forum state and the place where the acts comprising the alleged unfair competition have occurred. I rule that it is the common-law of New Hampshire as modified by Chapters 349 and 350–A[1] of the New Hampshire Revised Statutes Annotated that is to be applied to this case. *See* Clark v. Clark, 107 N.H. 351, 222 A.2d 205 (1966); Restatement (Second) of Conflict of Laws, Sec. 145, Comment f. However, because of the absence of controlling New Hampshire authority in this field, pertinent federal and other states' case law must be examined.

I specifically find that the plaintiff has not been guilty of laches. *See* particularly Exhibits 3, 4, and 8, and the letter from Arthur E. Jensen, Executive Secretary of the State of New Hampshire Coordinating Board of Advanced Education and Accreditation, to Robert L. Stark, Secretary of State for the State of New Hampshire, dated December 20, 1972, and contained in Exhibit 1.

## A. IRREPARABLE HARM

At the hearing on Friday, May 11, 1973, the plaintiff focused its evidence as to irreparable harm primarily on three areas: (1) prospective students; (2) prospective donors; and (3) the "image," reputation, and goodwill of Colby College. For reasons that are set forth more extensively herein, I find that the plaintiff has not shown that irreparable harm will result from defendant's proposed name change.

I do not think it is probable that students will erroneously apply to or attend defendant's school when they intended to

---

1. Both statutes expressly preserve the enforcement of rights in trade names acquired in good faith at any time at common-law. NH RSA 349:11 and 350–A:14.

apply to or attend plaintiff's institution. I am not persuaded that a prospective student who desires to go to Colby College in Waterville, Maine, will be misled for long enough to actually enter the defendant institution or even to seriously apply to it. It is an important step in the life of a student when he selects an institution for his education, and it may fairly be assumed that a selection will not be made without some investigation. Certainly a reading of the respective catalogues of each school would disclose to any prospective student that they are distinct and different institutions, not only as to geographical location, but also as to the composition of the student body and faculty, the courses and programs offered, and the degrees granted. Plaintiff's Exhibit 6 and Defendant's Exhibit A. The evidence further shows, with a few exceptions, that the two schools are not competing for prospective students from the same pool of applicants; they offer different educational programs which would normally attract students of dissimilar backgrounds and goals. Defendant's Exhibit H.

Likewise, I do not find it probable that either institution will obtain gifts of money or property actually intended for the other. Persons intending to make a donation to an institution such as these are likely to make some investigation as to the character of the school. It seems highly improbable that any donor of ordinary prudence would not recognize the difference between "Colby College" and "Colby College-New Hampshire." Based on the one mistake that was made in the past, it is clear that if there is an unintentional mailing error by a donor, neither institution would take advantage of it to the detriment of the other. *See* letter from Robert Strider to Louis Vaccaro dated October 24, 1972, contained in Exhibit 4.

Mr. Turner, Vice-President for Development of Colby College in Waterville, Maine, testified concerning the need for obtaining funds from what he termed "new friends," as well as alumni, and he stated that at many fund-raising affairs, the "new friends" ask if the college is located in New Hampshire or Maine. Since this confusion already exists as far as the "new friends" are concerned, it does not appear that the dropping of the words "Junior College for Women" and the substitution of the words "College-New Hampshire" by the defendant will create any additional confusion. I would also observe that any potential donors need to be sold on more than the location of a school in order to be induced to make gifts. The "new friends" will only become friends in need if they are given substantially more information about the college than its location and the fact that it is different as to curriculum, student body, and faculty than the institution in New London, New Hampshire.

While it is difficult to assess plaintiff's allegation that tarnishment and dilution of its "image," reputation, and goodwill will be caused by defendant's proposed name change, I am not convinced of the probability of such injury. As will be discussed more extensively herein, both plaintiff and defendant have used the word "Colby" as part of their respective trade names for the past ninety-five years. Plaintiff's Exhibits 1 and 2. While there has been some confusion resulting from the use of the word "Colby" by both colleges in the past, I am of the opinion that the use of the new name by the defendant will not add to or increase the confusion. Defendant is not attempting to pass itself off as an institution connected in any way with the plaintiff. This is not the case of a new college adopting the name "Colby" so as to "tread" on plaintiff's academic reputation and goodwill and thereby injure plaintiff's scholastic reputation or impair its patronage. While I can understand and sympathize with the resentment felt by the alumni of Colby College in Waterville, Maine, of being confused with the alumni of the institution in New London, New Hampshire, which has traditionally been a two-year college, this does not rise to the level of irreparable harm.

## B. PROBABILITY OF SUCCESS ON THE MERITS

Plaintiff contends that it has acquired an exclusive proprietary interest in the name "Colby College" because of its prior, long and exclusive use of said name and is, therefore, entitled to injunctive relief. This contention fails because both institutions have used the word "Colby" as part of their respective names for nearly a century.

In order for the plaintiff to prevail on the merits relative to its claim of common-law unfair competition, it must prove (1) that the name "Colby College" has achieved secondary meaning associated *exclusively* with the plaintiff, (2) that there is a likelihood that reasonably prudent members of the public will become confused as a result of defendant's proposed name change, and (3) that injury to the plaintiff will result therefrom. Direct competition between the plaintiff and the defendant is not a prerequisite to relief, Ball v. American Trial Lawyers Association, 14 Cal.App. 3d 289, 92 Cal.Rptr. 228 (1971), and the plaintiff need not prove fraudulent intent on the part of the defendant in order to prevail. Restatement of Torts, Sec. 717(1) (1938).

The trade names of educational institutions are entitled to the same protection afforded the trade name of a corporation operated for profit. *See* Annot., "Right of Charitable or Religious Association or Corporation to Protection Against Use of Same or Similar Name by Another," 37 A.L.R.3rd 277–327 (1971); Rickard v. Caton College Co., 88 Minn. 242, 92 N.W. 958 (1903); Columbia Grammar School v. Clawson, 120 Misc. 841, 200 N.Y.S. 768 (1923); Trustees of Columbia University in the City of New York v. Axenfeld, 136 Misc. 831, 241 N.Y.S. 4 (1930); and Dubuque German College and Seminary v. St. Joseph's College, Iowa, 169 N.W. 405 (1918).

The purpose of the doctrine of secondary meaning, as it applies to this case, is to protect an established college's name which the public has come to identify with the institution's "image," reputation, and goodwill from harm caused by the use of the same or a confusingly similar name by another educational institution. In order to determine if the public has come to identify the name "Colby College" as referring *exclusively* to the plaintiff's reputation and goodwill, it is necessary to recite the history of the names of the respective institutions.

Colby College's first name was the Maine Literary and Theological Institution. On June 28, 1820, it was given the right under this name to "confer such degrees as are usually conferred by Universities established for the education of youth." On February 5, 1821, the name was changed to Waterville College. On January 23, 1867, the name of the plaintiff institution became Colby University, and on January 25, 1899, the name was changed to Colby College, which name it has had ever since. Colby College has always been a coeducational institution. Plaintiff's Exhibit 2.

The New Hampshire institution first came into being on July 4, 1837, and was called the New London Academy. On July 13, 1854, this name was changed to the New London Literary and Scientific Institute and this, in turn, was changed in the following year to the New London Literary and Scientific Institution. On July 15, 1878, that name was changed to The Colby Academy, in honor of the Colby family who helped to found the school and fostered its early development and growth. On April 12, 1933, The Colby Academy became Colby Junior College for Women. On July 1, 1973, it is proposed that the name Colby Junior College for Women be changed to Colby College-New Hampshire. Plaintiff's Exhibit 1. Up until the last year or so, the New Hampshire institution had been limited to women, but it is now opening its doors, as are many other single sex institutions, to those of the opposite sex.

Colby College in Waterville, Maine, has always been a traditional liberal arts college granting a Bachelor of Arts de-

gree after four years matriculation. The New Hampshire school has, in the past, concentrated on two-year degrees, but has had authority under its charter since 1943 to grant four-year degrees and plans to enlarge in the near future the number of four-year degree programs that it will be offering. There is a marked difference in the curriculum of the two schools. The New Hampshire school can be fairly termed a technical school, concentrating in the paramedical field. Plaintiff's Exhibit 6. The type of student attracted to the schools is quite different and, if student caliber is measured in terms of secondary school success and high college board scores, then Colby College in Waterville, Maine, attracts a much higher caliber of student than does the New Hampshire school. Defendant's Exhibit H.

It might conceivably be found that the plaintiff's name, by reason of its use for seventy-four years, had acquired some secondary meaning or significance in the eyes of the public. However, since the word "Colby" has been a part of the name of the defendant since 1878 and was, in fact, the surname of one of the founders of defendant institution, and since the word "College" is a generic term designating an institution of higher learning, the name "Colby College" cannot be found to exclusively signify the plaintiff institution in the mind of the public. Newspaper clippings prior to the date that the defendant decided to change its name, introduced in evidence by both the plaintiff and the defendant, indicate that the name "Colby College" has not achieved a secondary meaning associated *exclusively* with the plaintiff. Colby Junior College for Women has repeatedly been referred to both informally in speech and formally in writing as Colby College. See Exhibits attached to the Plaintiff's Complaint and Defendant's D. The fact is that the words "Colby College" have a secondary meaning as to both institutions.

The plaintiff's right to a preliminary injunction depends also upon its showing that substantial confusion is likely to result from the defendant's proposed name change. Restatement of Torts, Sec. 727, Comment c (1938). The issue of confusing similarity is one of fact. The intent of the defendant in proposing to adopt the name "Colby College-New Hampshire" is a factor which bears on the issue of confusion. Restatement of Torts (Third), Sec. 729(b). There is no evidence that the change of name proposed by the defendant was engendered by any desire to trade on the admittedly fine reputation of Colby College in Waterville, Maine. The reason for the change of name is set forth graphically in Defendant's Exhibit B and boils down essentially to two points: one, the use of the word "Junior" prior to "College" is now thought to be denigrating and does not accurately reflect the diverse educational opportunities at the school and the nature of the degrees that can be earned and, therefore, inhibits the recruitment of prospective students; and second, that the words "for Women" are now inappropriate in that Colby of New London, New Hampshire, intends to admit as many male students as they can consistent with facilities and admission requirements. Defendant did not adopt the name "Colby College-New Hampshire" with the intent of deriving benefit from plaintiff's reputation and goodwill. Rather, the new name was arrived at by polling the alumni of Colby Junior College (Deft. Ex. C) and reflects a good faith effort on the part of the defendant to select a name which fairly represents the present character of the institution and at the same time continues to use the name of one of its founders. I do not find that the defendant has acted unfairly or is trying to perpetrate a constructive fraud on the plaintiff or take advantage of its good name.

This case is, therefore, markedly different from the case of Trustees of Columbia University in City of New York v. Axenfeld, 136 Misc. 831, 241 N.Y.S. 4 (1930). Although the plaintiff relies heavily on this case, it does not stand for the proposition for which it was cited. If the first sentence of the two sen-

tence paragraph that constitutes the entire opinion is read along with the sentence quoted by the plaintiff, it is clear that the case is inapposite. The first sentence is critical to the opinion and reads as follows:

> The conclusion is irresistible that defendants in adopting the name "Columbia Educational Institute" did so with the deliberate design of conveying to the public the impression that they were identical or associated with the plaintiff.

Nor do we have a situation like the one in Rickard v. Caton College Co., 88 Minn. 242, 92 N.W. 958 (1903), where the court found that the enjoined school had imitated the plaintiff in a manner that was likely to deceive and mislead persons by whom they would otherwise be patronized. Likewise, the case of Columbia Grammar School v. Clawson, 120 Misc. 841, 200 N.Y.S. 768 (1923), is inapposite for there the defendant filed for a name very similar to the one which the plaintiff had been *exclusively* using for fourteen years, and the evidence showed that the similarity of names was not only apt to be misleading but had, in fact, misled.

The evidence in this case clearly shows that there has always been some confusion, at least from 1933 on, between Colby Junior College and Colby College in Waterville, Maine. I find that, while some confusion will inevitably continue to exist so long as the word "Colby" is used in the title, the confusion in the future will probably not exceed the confusion that has existed in the past. As I indicated earlier, the degree of care likely to be exercised by prospective students and donors [2] is such that I find that the name "Colby College-New Hampshire" will not create a likelihood of increased confusion to the detriment of the plaintiff College. I realize that "Colby College-New Hampshire" will probably be informally referred to by some students, alumni, and members of the public as Colby College.

But this is already the case. *See* Exhibits attached to the Plaintiff's Complaint and Defendant's Exhibit D. No court order, however, can be effective as to distortions and informal shortening of names. Whatever confusion does result, however, will not be of serious consequence to Colby College, and, in time, the alumni of the New Hampshire school may also resent the fact that they are being confused with that "other" Colby.

Use by the defendant of the complete name "Colby College-New Hampshire" should serve to sufficiently distinguish the two institutions in the minds of the public. It can only be hoped that those from other sections of the country who do not appreciate the difference between Maine and New Hampshire will at least realize that "Colby College-New Hampshire" is not "Colby College."

Motion for preliminary injunction denied. So ordered.

---

2. See Restatement of Torts (Third), Sec. 729 (d).